IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ELIZABETH L. WARD, as administratrix )
and personal representative of the Estate of )
CLIFTON DEVON WARD )
)
    Plaintiff, )
)
vs. ) CIVIL ACTION NO. 09-0683-CG-M
)
UOP LLC, et al., )
)
    Defendants. )

**ORDER**

    This matter is before the court on the report and recommendation of the magistrate judge (Doc. 19), the objection of defendant UOP, LLC ("UOP") to the report and recommendation (Doc. 20), the plaintiff's response to the objection (Doc. 22), and defendant UOP's reply brief to the plaintiff's response. (Doc. 25). The magistrate judge recommended that this action be remanded to state court because UOP failed to meet its burden of proving, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional requirement of $75,000. Upon a de novo review of those portions of the report and recommendation to which the objection is made, the court disagrees with the findings of the magistrate judge, but finds that this civil action should be remanded to the Mobile County Circuit Court because UOP has failed to establish by clear and convincing evidence that Alfred L. Cutrone, Jason Novak, and Gary

Dunn (hereinafter referred to as "the individual defendants"), who are citizens of the State of Alabama, were fraudulently joined.

## FACTS

Clifton Devon Ward is the late husband of the plaintiff, Elizabeth L. Ward. Clifton, who was employed by G.A. West Company, Inc. ("West"),[1] was killed on April 8, 2009, in an accident while working at the facilities of defendant UOP in Chickasaw, Alabama. The complaint alleges that "[o]n or about April 8, 2009... Clifton Ward was suddenly and without warning subjected to a severe and unsurvivable crushing injury to his chest" due to "a pneumatically powered piston or cylinder struck him in the chest, pinning him between the large, moving, pneumatic piston and a verticality oriented steel I-beam which was part of the overall structure of the area of the plant" as he was "working as a maintenance technician to restore proper operations of a certain area within the plant known as 'muller Number 7A.'" (Doc. 3-2. p.87, ¶ 6).

As the administratrix of her husband's estate, the plaintiff brought this action against UOP and the individual defendants in the Mobile County Circuit Court, raising claims of negligence and wantonness in his wrongful death. (Id., pp. 87-90, ¶¶ 8 & 10). The plaintiff's complaint specifically asserts that UOP and the three individual defendants negligently and wantonly (1) failed "to provide [Mr. Ward] with a reasonable safe place to work;" (2) failed "to provide reasonably safe equipment and utensils including the controls, actuators, and logic associated with the operation of the... muller"; (3) failed "to guard the area beneath the... muller in such a way as to prevent workmen in the area from coming into contact with the moving

---

[1] West is not a defendant in this action.

pneumatic piston associated with the dump door closing mechanism for said muller; (4) designed "the control module logic for the... muller;" (5) designed the "muller controls so as to permit unanticipated and inadvertent movement and actuation of the door closing piston;" (6) failed to "adequately guard the area of the crush point..."; (7) caused, allowed, or authorized "work to continue without adequate tag out and lock out procedures having been initiated;" (8) failed "to appropriately design and initiate adequate lock out and tag out procedures for maintenance work on the... muller"; (9) caused or allowed "the dump door closure limit switch to be located in such a position as to expose workmen to the potential of serious bodily injury or death should they inadvertently contact the same;" (10) incorporated "a 'limit' switch into the controls and actuators of the... muller"; (11) failed "to appropriately guard the remotely located activation switch... which was located directly in the path of the pneumatically powered door closure piston;" (12) failed "to appropriately label the aforementioned limit switch in such a fashion as to apprise workmen in the area of the dangers associated with inadvertent contact with said switch;" and (13) failed "to warn the [decedent]... of the dangers associated with the limit switch and movement or contact with the same." (Id.). The complaint further provides:

> 4. The Defendant Alfred L. Cutrone... was the Plant Manager of the plant and facilities where the accident made the basis of this lawsuit occurred, and as such was responsible for overall safety of the entire plant, and was particularly responsible for providing the employees of sub-contractors working on the premises with a safe place to work and safe equipment and utensils to work with at the times and places made the basis of this lawsuit.

> 5. The Defendants Jason Novak and Gary Dunn... shared the position of Plant Safety Manager at the UOP facility where the accident made the basis of this lawsuit occurred, and as such, were responsible not only for plant safety and for the identification of unsafe and hazardous equipment and conditions of the premises, but also were responsible for the identification of unsafe work practices and procedures on the premises where the accident made the basis of this lawsuit occurred.

(Id., pp. 86-87, ¶ 4 & 5).

Ultimately, the plaintiff "demands punitive damages against the aforementioned defendants in an amount to be determined by the jury for the wrongful death of her husband." (Doc. 3-2, p. 90).

On October 15, 2009, UOP filed a notice of removal in this court stating that "removal is proper because there is diversity of citizenship between Plaintiff and UOP (the only properly-joined defendant), and the amount in controversy in this wrongful death action exceeds $75,000." (Doc. 1, p. 1). The defendants attached to the removal notice affidavits from the three individual defendants. For example, Mr. Cutrone testified as to the following:

> 2. ...I am the plant manager at UOP's plant in Chickasaw, Alabama....
> ...
> 4. As plant manager, I have general administrative responsibility for the operations of the UOP plant. I have no ownership interest in the plant.
>
> 5. UOP has a standing maintenance agreement with G.A. West, an independent, third-party maintenance contractor, to service and/or repair various equipment at UOP's plant. When UOP hires G.A. West pursuant to this agreement, UOP's contact is with G.A. West's project foreman. Based on that contact, G.A. West designates which of its employee(s) that it sends to UOP and selects which particular employee(s) it assigns to a particular job.
>
> 6. I am aware that an accident occurred at the UOP plant while G.A. West employees Clifton Ward and Ernie Walley were repairing a muller pursuant to UOP's standing maintenance agreement with G.A. West. I understand that Mr. Ward died as a result of injuries that he sustained in the accident.
>
> 7. I played no role in the decision to hire G.A. West to perform the muller repairs.
>
> 8. I played no role in selecting the individuals that G.A. West sent to perform the requested repairs.
>
> 9. I never trained or supervised Mr. Ward or Mr. Walley while they were at the UOP plant. In fact, I did not know Mr. Ward and had never worked with him. I did not know where he was making repairs on the day of the accident.

(Doc. 3-1, pp. 1-2).

The other two individual defendants testified to similar facts. (See Id., pp. 4-9). Furthermore, Mr. Dunn, the plant safety coordinator, and Mr. Novak, the plant safety manager, testified that they "played no role in the decision to hire G.A. West to perform the requested repairs"; "played no role in selecting the individuals that G.A. West sent to perform the requested repairs"; "never trained or supervised Mr. Ward... regarding [his] work at the UOP plant"; and "did not inspect the work performed by Mr. Ward... on the day of the accident" and "had no contact with [him] that day", "did not speak with [him], and I did not know where [he was] working in the plant." (Id., pp. 5 & 7-8, ¶¶ 6-9).

On November 12, 2009, the plaintiff filed a motion to remand arguing that "removal was substantively and procedurally improper." Specifically, the plaintiff argued that "the removing Defendant, UOP, LLC, has not proved and cannot prove the jurisdictional amount in controversy, and UOP has not established fraudulent joinder as a matter of law." (Doc. 9, p. 1). This motion was then referred to the magistrate judge.

On January 22, 2010, the magistrate judge recommended to this court that the plaintiff's motion to remand be granted and that the action be remanded back to the Mobile County Circuit Court for further proceedings because UOP failed to meet its burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional requirement of $75,000. (Doc. 19). On February 4, 2010, UOP objected to the report and recommendation arguing that (1) the magistrate judge "did not address UOP's argument that common sense and judicial experience establish more than $75,000 is in controversy in this Alabama wrongful death action"; (2) the magistrate judge "clearly erred in finding that plaintiff's counsel's arguments concerning the value of Alabama wrongful death awards

5

constitute 'outside sources'" and is relevant under Alabama and federal law; and (3) the magistrate judge "erred in rejecting UOP's argument that Lowery [v. Ala. Power Co., 483 F.3d 1184 (11th Cir. 2007)] is unconstitutional as applied to Alabama wrongful death actions because it deprives UOP and other defendants of due process and equal protection of the law." (Doc. 20, pp. 3-4).

On February 17, 2010, the plaintiff responded to UOP's objection asserting that (1) the magistrate judge correctly concluded that UOP failed to meet its burden in regards to the amount in controversy; and, alternatively, that (2) remand is necessary because "complete diversity does not exist because Alabama individual defendants Cutrone, Novak, and Dunn were properly joined..." (Doc. 22, pp. 1-2). On February 24, 2010, UOP filed a reply brief responding to the plaintiff's complete diversity arguments by asserting that "[u]nder Alabama law, Plaintiff cannot state a viable claim" against the individual defendants, thus UOP maintains that the individual defendants were fraudulently joined and that as a result, this court should disregard the individual defendants in analyzing the plaintiff's motion to remand. (Doc. 25, pp. 1-2).

**LEGAL DISCUSSION**

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1356 (11th Cir. 1996)(citing 28 U.S.C. § 1441(a), abrogated on other grounds Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). However, "[b]ecause removal jurisdiction raises significant federalism

6

concerns, federal courts are directed to construe removal statutes strictly... Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "[T]he removing party bears the burden of demonstrating federal jurisdiction.: Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 n. 4 (11th Cir. 1998)(citation omitted); see also Tapscott, 77 F.3d at 1356("A removing defendant has the burden of proving the existence of federal jurisdiction.").

### I. Amount in Controversy

In order for UOP to succeed in showing that plaintiff's claim for punitive damages in this suit exceeds the $75,000 threshold, the jurisdictional amount must be "facially apparent," Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001), or "readily deducible" from the face of the complaint." Lowery v. Ala. Power Co., 483 F.3d 1184, 1211 (11th Cir. 2007). In the complaint, the plaintiff seeks "punitive damages against the [] defendants in an amount to be determined by the jury for the wrongful death of her deceased husband." (Doc. 3-2, p. 90). In its notice of removal, UOP asserts that plaintiff's claim for punitive damages in this Alabama wrongful death action exceeds the $75,000 floor despite the fact that the plaintiff did not specify a definite amount in her complaint. (Doc. 1, p. 9). UOP argues that since this suit is one for wrongful death under Alabama law, the court would have to "suspend reality or shelve common sense" to find that the $75,000 threshold was not met.[2] (Doc. 21, p. 5).

---

[2] In removing this action, the defendants assert their "statutory right to federal forum" and also urge this court to consider "the fact that Plaintiff's counsel consistently values [wrongful death] cases in excess of $75,000." (Doc. 1, ¶¶ 22 & 26). As support, the defendants direct this court's attention to six cases which the plaintiff's counsel has been successful in presenting his clients' cases to the jury. (Doc. 1, ¶ 25). The magistrate judge concluded that the defendant's evidence of "the fact that plaintiff's counsel consistently values [wrongful death] cases in excess of $75,000" in six different cases," is "outside evidence" and that evidence,

7

On the other hand, the plaintiff asserts that "[t]his wrongful death action seeks only punitive damages as allowed by Alabama Code § 6-5-410, which provides for 'such damages as the jury may assess'" (Doc. 9, p. 3) and Alabama law provides "the unfettered downward discretion of an Alabama jury in a wrongful-death action as to the amount of damages." (Doc. 22, p. 12). Therefore, the plaintiff argues that a conclusion that this suit involves more than $75,000 would be purely speculative and that the Court of Appeals for the Eleventh Circuit has provided that "[i]f that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." Lowery, 483 F.3d at 1214-15.

This court agrees with UOP and finds that it is readily deducible from the complaint that a jurisdictional amount above the $75,000 is present in this case. Even though the plaintiff does not list a specific amount on her complaint, "[n]othing in Lowery says a district court must suspend reality or shelve common sense in determining whether the face of a complaint, or other document establishes the jurisdictional amount." Roe v. Michelin N. Am., Inc., 637 F.Supp.2d 995, 999 (M.D.Ala. 2009). As the District Court for the Middle District of Alabama explained,

> Lowery provides that the standard for stating a plausible claim for relief under Federal Rule of Civil Procedure 8 applies to 28 U.S.C. § 1446 removal notices as well. 483 F.3d at 1216-1217 ("Just as a plaintiff bringing an original action is bound to assert jurisdictional bases under Rule 8(a), a removing defendant must also allege the factual bases for federal jurisdiction in its notice of removal under § 1446(a).")...

---

pursuant to Lowery v. Ala. Power Co., 483 F.3d 1184 (11th Cir. 2007), can not be used by district courts in determining jurisdictional value of a case. (Doc. 19, pp. 3-5). For the same reasons stated in the report and recommendation, this court agrees with the magistrate judge that the defendant's evidence of six other cases is "outside evidence," which, pursuant to Lowery, can not be used by this court in determining the jurisdictional value of a case.

Therefore, just as a district court can use, pursuant to Rule 8, its "judicial experience and common sense" to conclude that a dispute over the ownership of a non-unique Snicker's candy bar would not satisfy the jurisdictional amount and thus would warrant dismissal of an originally filed lawsuit, it can use, pursuant to § 1446, its "judicial experience and common sense" to conclude that a dispute in which the wanton conduct of a large company resulting in a death indisputably does satisfy the jurisdictional amount and thus does not warrant remand. Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)("Determining whether a complaint states a plausible claim for relief will... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Roe, 637 F.Supp.2d at 999.

In an Alabama wrongful death case, "the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions-not to compensate the plaintiff." Trott v. Brinks, Inc., 972 So.2d 81, 84 (Ala. 2007). The jury determines this amount not only based on the culpability of the defendant's conduct but also on "the gravity of the wrong done." Deaton, Inc. v. Burroughs, 456 So.2d 771, 776 (Ala. 1984). "Far from ignoring the tragedy of a life cut short in assessing damages for its demise, Alabama's wrongful death scheme elevates it to prime importance." Nelson v. Whirlpool Corp., – F.Supp.2d –, 2009 WL 3792267, at *3 (S.D.Ala. Nov. 13, 2009)(Steele, J.). As Judge William H. Steele stated,

> "The very purpose of punitive damages, then, in a wrongful death context, rests upon the Divine concept that all human life is precious." Estes Health Care Centers, Inc. v. Bannerman, 411 So.2d 109, 113 (Ala. 1982). "[I]t is indeed the value of life itself upon which punitive damages are premised." Id. Thus, "[t]he legislature has authorized the jury to ascertain an amount of damages appropriate to the goal sought to be achieved-preservation of life because of the enormity of the wrong, the uniqueness of the injury, and the finality of death." Campbell v. Williams, 638 So.2d 804, 811 (Ala. 1994). The jury is specifically expected to consider the finality of death in fixing the amount of punitive damages, id., and lawyers may properly make jury arguments concerning the value of human life (in general, not of the particular decedent).

Nelson, 2009 WL 3792267, at *3.

9

The plaintiff's complaint alleges that UOP and the three individual defendants not only negligently but wantonly took human life. "Given that Alabama law views every human life as precious and requires juries to consider the finality of its premature destruction in assessing damages, the Court concludes that it is readily deducible from the complaint that the amount in controversy exceeds $75,000." In fact, "[f]ew things would defy common sense more completely that insisting that a suit for wantonly killing a human being," for "which the damages are designed to vindicate 'the Divine concept that all human life is precious,' the plaintiff may explicitly argue 'the value of life itself,' and the jury is expected to consider 'the finality of death' in assessing damages, does not place more than $75,000 in controversy." <u>Nelson</u>, 2009 WL 3792267, at *3; <u>see</u> <u>Roe</u>, 637 F.Supp.2d at 999("it is not speculative to conclude from the egregious conduct alleged that the amount, whatever it is, far exceeds $ 75,000. Indeed, the court cannot image a plaintiff's lawyer saying with a straight face that this wrongful-death case should be valued at no more than $75,000."). In light of the foregoing, this court finds that it is readily deducible from the plaintiff's complaint that a jurisdictional amount above the $75,000 is present in this case.

## II. Fraudulent Joinder

As stated above, federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). The plaintiff, who is a citizen of Alabama, filed this lawsuit against UOP, who is not a citizen of Alabama, and three individual defendants, who are all citizens of Alabama. In light of this fact, this court would find that the plaintiff's motion to remand is due to be granted since the present action is not between citizens

of different states. However, UOP argues that "[u]nder Alabama law, Plaintiff cannot state a viable claim against" the individual defendants thus "Plaintiff's claims against the UOP employees are fraudulently joined with her claims against UOP to defeat diversity." (Doc. 25, p. 1 & 17); see Tapscott, 77 F.3d at 1359("An action may nevertheless be removable if the joinder of non-diverse parties is fraudulent.").

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs, 154 F.3d at 1287. Joinder has been deemed fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident non-diverse defendant. Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983) superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993); (2) when the plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court. Coker, 709 F.2d at 1440; and (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." Triggs, 154 F.3d at 1287; Tapscott, 77 F.3d at 1355.

It appears from its reply that UOP is relying on the first type of fraudulent joinder. (See Doc. 25, p. 2). In this type, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." Coker, 709 F.2d at 1440-1441. "Conversely, if no such possibility exists, the joinder is fraudulent as a matter of law." Nelson, 2009 WL 3792267, at *4(citing Coker, 709 F.2d at 1440). However, there must be

11

"no reasonable possibility" of legal liability; a mere theoretical possibility will not prevent a conclusion of fraudulent joinder. Legg v. Wyeth, 428 F.3d 1317, 1325 & n. 5 (11th Cir. 2005).

The removing defendant's burden of establishing fraudulent joinder "is a heavy one." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). "The defendant's showing that there is no possibility that a plaintiff can recover under state law, must be established by clear and convincing evidence." Benjamin v. Thompson, 2005 WL 2285015, at *7 (S.D.Ala. 2005). "To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)(citation omitted).

Furthermore, "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties..." Pacheco de Perez, 139 F.3d at 1380 (citations omitted). In Crowe, the Eleventh Circuit cautioned

> While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b),..., the jurisdictional inquiry must not subsume substantive determination... Over and over again, we stress that the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.

113 F.3d at 1538 (citations and quotation marks omitted).

In sum, "[i]n the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent and frivolous claims." Benjamin, 2005 WL 2285015, at *8.

UOP argues that "[u]nder Alabama law, Plaintiff cannot state a viable claim against

12

defendants Alfred Cutrone, Gary Dunn, and Jason Novak." (Doc. 25, p. 1). It is well settled law in Alabama that

> [t]he owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of. But if the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know, it is the duty of the owner to warn the contractor, and if he does not do this he is liable for resultant injury.

Fielder v. USX Corp., 726 So.2d 647, 649 (Ala. 1998)(quotations and citations omitted) Even though UOP admits that it may be liable under this duty, UOP argues that this duty does not extend to any of its employees. (Doc. 25, p. 6-7). The plaintiff, on the other hand, maintains that plant managers and safety managers can owe a duty to independent contractors to provide the safety of any pre-existing dangers on the premises (Doc. 22, pp. 16-19), and that such a duty is consistent with comparable circumstances where managers have duties that subject them to liability (Id., p. 19). For example, plaintiff points out that this court has held that plant and environmental managers could be liable for injuries to members of a surrounding community from hazardous pollution released from their employer's plant (Id., pp.19-20) and plant managers and safety managers are routinely sued by co-employees alleging "willful removal of, failure to install, or failure to maintain safety devices." (Id., p. 20).

The parties did not cite, nor could this court find, any Alabama state or federal cases that establish whether or not a premises owner's duty to warn an independent contractor of any unknown dangers can extend to an employee of a premises owner. The plaintiff and UOP each argue that Alabama law and policy does or does not, respectively, warrant this court to extend UOP's duty to the individual defendants. However, at this point in the case - that is, on a motion for remand - the court's analysis must be limited to determine whether the plaintiff has an

arguable claim. Based on the parties' arguments, "[i]f this case were properly before [this court] under original diversity jurisdiction, we would be obligated to predict how the [Alabama] Supreme Court would rule on this issue or to certify the question to the [Alabama] Supreme Court." However, when determining whether a case should be remanded to state court, "the inquiry by federal judges must not go so far". Crowe,113 F.3d at 1540. As the Eleventh Circuit stated,

> This is an Erie problem in part, but only in part. In the usual diversity situation a Federal Court, no matter how difficult the task, must ascertain (and then apply) what the state law is... But here the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law.
>
> Id.(quoting Bobby Jones Garden Apartments v. Suleski, 391 F.2d 172, 176-77 (5th Cir. 1968)).

Upon review of the plaintiff's pleadings at the time of removal and the affidavits submitted by UOP, the court finds that there arguably is a reasonable basis for predicting that Alabama law might impose liability on the individual defendants. First, there are no Alabama cases preventing such liability. Second, under Alabama law, "a corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort." Ex parte McInnis, 820 So.2d 795 (Ala. 2001)(quoting Sieber v. Campbell, 810 So.2d 641, 645 (Ala. 2001)(internal citations omitted); see also Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So.2d 774, 775 (Ala. 1986)("In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity.")(citations omitted). Third, plant managers and safety managers can be liable under Alabama law to a co-employee for the

willful removal of, failure to install, or failure to maintain safety devices. See Ala.Code § 25-5-11(c)(2) (1975)(Co-employees are immune from suit under Alabama's workmen's compensation law, except in cases which the plaintiff employee alleges that the defendant co-employee engaged in "willful conduct which results in or proximately causes the injury or death.").[3]

In sum, neither the express words of the plaintiff's complaint, nor the individual defendants' affidavits, forecloses the possibility that the individual defendants may be liable for Mr. Ward's wrongful death. Since the defendants have not shown by clear and convincing evidence that the individual defendants were fraudulently joined, this potential liability is sufficient to establish the lack of complete diversity between the plaintiff and the defendants, and thus the court's lack of jurisdiction over the action.

## CONCLUSION

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a determination of those portions of the report and recommendation to which objection is made, it is **ORDERED** that this case be and is hereby **REMANDED** to the Mobile County Circuit Court, Alabama.

---

[3] UOP argues that this courts' reliance on suits by co-employees is misplaced. (Doc. 25, p. 10). UOP argues that "a supervisory employee may not be sued simply because of his or her job title." Rather, the plaintiff must "be able to demonstrate that the supervisor played an active role in the alleged willful misconduct that purportedly caused the co-employee injury." (Id., p. 11) and the plaintiffs have not done that here. Although defendant UOP wants this court to gauge whether the individual defendants' participation in this tort is enough to make them liable, this court's inquiry is much more basic. This court must merely decide whether the defendants have shown by clear and convincing evidence that no Alabama court could find plaintiff's complaint sufficient to invoke claims for wantonness. While the individual defendants' denials, as testified to in their affidavits, and the fact that there are "dozens of co-employee decisions" and a "complete absence of independent contract premises liability opinions against premises employees", may be ultimately victorious in denying liability, this court is unable to say at this stage that there is no possibility the plaintiff has asserted a colorable claim of wantonness.

**DONE** and **ORDERED** this 9th day of March, 2010.

              /s/ Callie V. S. Granade
              UNITED STATES DISTRICT JUDGE